THE WATERTOWN STEAM ENGINE CO. *v.* PALMER BROS.

1. Where the authorized agent of a company brought, in his own name, trover and bail for a horse belonging to it, and recovered, and in this litigation the company assisted, paying counsel fees, and after judgment was obtained, creditors of the agent whose debt was contracted before the trover suit was commenced, garnished the surety on the bail-bond of the defendant in that suit, and the company dissolved the garnishment and the surety paid the condemnation money into court, the company was not estopped from claiming the fund as against the creditors of the agent. That it assisted him in the trover suit was not such an admission of his title as would estop it from asserting its own title against persons not parties to that suit nor prejudiced by the admission.
2. That the fund was paid into court by the surety and not the principal in the bail-bond, does not alter the case. It was the fruit of the suit for the conversion of the horse.

February 10, 1890.

Principal and agent. Debtor and creditor. Estoppel. Garnishment. Title. Admissions. Before Judge HARRIS. City court of Macon. June term, 1889.

Reported in the decision.

S. A. REID, by HARRISON & PEEPLES, for plaintiff in error.

TURNER & WILLINGHAM, *contra.*

SIMMONS, Justice.

The record in this case shows the following to be, in substance, the facts of the case : J. C. Pinkerton represented the Watertown Steam Engine Co., as its southern agent, and made a settlement with one Tyson for an engine, taking two mules from him in part settlement of his note to the company. Pinkerton kept the mules at Davis's stables. One of them died and the other was traded to one Pope for a sorrel horse. One Cook got possession of this horse in some way, and Pinkerton brought bail trover therefor. Mansfield stood Cook's security on the bail-bond. Pinkerton recovered the value of the horse. In the litigation about

the horse the Watertown Company assisted, paying counsel his fees. The suit was brought in the name of Pinkerton. After judgment in the suit was obtained, Palmer Brothers sued out a summons of garnishment for Mansfield, the security on the bail-bond, they having previously obtained judgments against Pinkerton. The Watertown Company dissolved the garnishment. Mansfield answered that when the Watertown Company dissolved the garnishment by filing the bond, he paid over to the bailiff of the court $196, that being the amount for which he was liable as security on the condemnation bond in the bail trover case. The Watertown Company claimed as its property the fund thus paid in, as standing in place of the mule exchanged for a horse which belonged to it. Under the charge of the court the jury found against the claimant, the Watertown Company, in favor of Palmer Brothers. The claimant made a motion for a new trial upon the several grounds set out therein, which was overruled by the court, and it excepted.

Without discussing the many technical grounds set out in the motion, we will confine ourselves to the real merits of the case; and upon the merits, we think the court erred in charging as set out in the 10th ground of the amended motion. The substance of that charge is, that if the Watertown Steam Engine Company had knowledge and notice of the pending suit, and aided Pinkerton by employing counsel, and set up no claim itself at the time, or did not require its agent to sue in his own name for its use, it is bound thereby; and if before asserting its claim the money was garnished by a judgment creditor of Pinkerton, it would be in law the property of Pinkerton and bound for the payment of the judgment creditor. In other words, if the Watertown Company aided Pinkerton in recovering this property, without disclosing that it was its property, it

v 84-24

would be estopped from claiming the fund arising therefrom, as against the garnishing creditor.

We do not agree with the court below in this view of the law. · The evidence shows that Pinkerton was the agent of the Watertown Company, with full authority to collect debts, settle claims and convert property into cash for the company, and that he did settle one of its claims, taking two mules in payment therefor, one of which was exchanged for a horse. Cook converted this property and Pinkerton brought suit against him. Pinkerton was in possession of the property when it was unlawfully converted by Cook, and. under the code he had a right to bring this suit in trover and to recover the property or its value. It is true he brought the suit in his own name, and was aided therein by the Watertown company, but we do not see how this fact should estop the company as between it and Palmer Brothers. It appears from the record that Palmer Brothers' debt against Pinkerton was contracted before this suit by Pinkerton against Cook was instituted. The credit, therefore, was not given on the faith of this property ; and this being true, we cannot see how Palmer Bros. could be injured by allowing the real owner of the property to assert its claim thereto, although the agency of Pinkerton was unknown. In the case of *Woodruff* v. *McGehee,* 30 *Ga.* 158, it was held : " When an agent makes a contract for his principal, but conceals the fact that he is an agent, contracting as if he were principal, the principal may at any time appear in his true character and claim all the benefits of the contract from the other contracting party, so far as he can do so without injury to that other by the substitution of himself for his agent." STEPHENS, J., in delivering the opinion, says : "The reason of the doctrine is that it is but just that every man should have what really, though secretly, belongs to him, so far as he can obtain it with-

out injuring another by appearing in his true character of owner." See also the case of *Spain* v. *Beach*, 52 *Ga.* 494, in which "A, the agent of B, having in hand certain money belonging to B, deposited it in bank to his own credit, he having already there a credit to himself, whereupon a creditor of A garnished the bank. B filed a claim affidavit and bond under the act of 1871 (Code, §§3541, 3543), and his money was paid him on A's check. A dissolved the garnishment in the usual mode, and got the balance on his own check: *Held*, that B might assert his right to the money in this way."

Palmer Brothers, not being parties to the trover suit and not having given credit to Pinkerton on the faith of this property, cannot be injured or damaged by allowing the Watertown company, the true owner, to set up a claim to the property. Nor, in our opinion, can they assert the doctrine of estoppel against the Watertown company. If the Watertown company were now suing Cook and Mansfield for this horse, under the facts disclosed by the record we think the doctrine of estoppel could be asserted by Cook and Mansfield against it : but it does not apply as between the Watertown company and Palmer Brothers. Nor was the fact that it assisted Pinkerton in the suit for the recovery of the horse such an admission by it of the title being in him as would estop them from setting up their own title against any persons not parties to that suit nor prejudiced by the admission.

2. It was insisted by counsel for the defendants in error that even if the Watertown company was not estopped from setting up title, it would still not be entitled to the fund in court, because the fund was not paid in by Cook, against whom the trover suit was brought, but by Mansfield, as security on the bail-bond ; and he refers to the case of *Cairns* v. *Iverson*, 3 *Ga.* 132, to sustain that position. The facts of that case are very different from the facts in this. In that case the cred-

itor sued the administrator, and obtained a judgment *quando.* The heir at law sued the administrator and had a judgment absolute. The administrator absconded, and his surety paid to the heir at law the amount of the judgment. A creditor filed his bill against the heir at law and alleged that, inasmuch as creditors were entitled to the property before distributees, the heir should pay to him the amount received from the surety. The court in that case held that the money paid by the surety was not money belonging to the estate, and therefore the creditor was not entitled to it. In this case, when Pinkerton sued Cook, he at the same time required him to give bail, and in pursuance of the statute Cook gave a forthcoming bond with Mansfield as security, and agreed therein to answer such judgment, execution or decree as might be rendered or issued in the case, and agreed to be bound for the payment of the eventual condemnation money. So that the money paid into court by Mansfield, the security, was the fruit of Pinkerton's suit against Cook for the wrongful conversion of the horse.

For these reasons, we think the court below erred in refusing to grant a new trial in this case.

*Judgment reversed.*